# EXHIBIT 10

**From:** FO Lawrence Meadows - AA 332713   18Sep13
Po Box 4344
Park City, UT 84060

**To:** Captain Keith Wilson
President, Allied Pilots Association
O'Connell Building - Suite 500
14600 Trinity Boulevard
Fort Worth, TX 76155-2512 USA

**Sent via certified mail and e-mail**

**Subject:** FO Meadows Grievance #12-011 SB Denial Request For Reconsideration

Dear Captain Wilson,

    I'm writing in response to your System Board denial letter dated Aug. 29, 2013, and must inform you that I am extremely disappointed, and do not understand APA's decision not to send my grievance to a System Board of Adjustment. Moreover, APA's position simply does not make any sense, and fails protect my rights under the contract and federal law; and further strips away my ability to ever be re-employed as either an AA pilot or to be reasonably accommodated into another position within the CBA. Especially considering the fact that APA obviously previously thought my grievance was viable and important enough to protect , and to specifically select it as one the only 37 grievances out of hundred' to preserve on Exhibit 1 of the bankruptcy settlement Agreement. Additionally, APA represented me at my grievance hearing on Apr. 24, 2013, and after being denied by the VP of FLT, you subsequently exercised your discretion, to appeal this matter to a Pre-Arbitration Conference (PAC). However, it now seems APA is stopping short without a legitimate rationale, and just does not want to bring my grievance to a full conclusion.

    Based on your denial letter, and on what APA Legal has since explained, I understand that my request for a System Board is being denied because APA now suddenly claims there is no contractual basis for my grievance; and further because APA now believes my claims are only statutory; and further, that I am already pursing my SOX and EEOC claims in the proper federal forums. However, *it is highly unlikely that my federal termination claims adjudicated in any other venue is highly unlikely, based on, but not limited to the following reasons;* 1) My federal SOX and EEOC claims were not preserved on my originally filed bankruptcy proof of claim, 2) Moreover, my SOX and EEOC claims are only preserved with the bankruptcy court as part of my preserved APA grievance #12-011, absent a System Board those claims will likely be deemed disposed of along with the final denial of my grievance, 3) AA's bankruptcy counsel has

since asserted that my SOX complaint was filed in violation of the automatic bankruptcy stay under U.S Bankruptcy Section 362(a)(1), rendering it void and without vitality. 4) Thus, the bankruptcy court can likely disallow my federal claims or discharge them as a debts arising from pre- commencement claims, and 5) My EEOC claim was also filed during the bankruptcy stay, but AA has engaged in that process thus far. and the EEOC has not even concluded its investigation, and has said that they might dismiss my discrimination charge against AA.

In sum, if APA chooses not to arbitrate my grievance, I will be severely harmed, and my ability to be made whole will be completely jeopardized; But for my pending grievance I will likely be left without any timely or viable claims against American. Therefore, I respectfully ask for reconsideration of your decision, and once again pray you appeal my grievance to a System Board in accordance with Sec. 23. Time is of the essence, as the 30 day deadline to appeal my grievance to a SB expires tomorrow.

**In order to give you an informed basis to do so, I offer the following pertinent points that weigh heavily in favor of sending my grievance to a System Board;**

**First;** And most importantly, as mentioned previously, I would be severely prejudiced in the bankruptcy claims resolution process if my grievance is now deemed to be finally denied. My grievance was preserved as part of the APA Settlement Agreement, and is an integral part of my damages on my proof of claim. If it is denied, it will adversely affect the amount of my claim against American, and disincentivize American from making a good faith effort to offer me nay relief or make whole remedies.

**Second;** APA continues chooses to ignore the fact I have been terminated under the contract, but the company has clearly improperly terminated me under guise of an ex post facto application of Sec 11.D, by backdated my five year sick leave date, removing me from the seniority list, and improperly unwinding 2.5 years of Credited Service in the process. However, Section 11.d only provides for removal from the seniority list and does not provide for termination, so it is clear that I was terminated for some other cause and in violation of the contract. Moreover, AA has explicitly acknowledged in bankruptcy pleadings that I was in fact terminated. Furthermore, just last week the AA Dir of Flt Admin, made it clear that even if I do obtain FAA medical certification, I cannot return to American, because I was one of the ones (AA pilots) who was not only removed from the seniority list but also terminated. Regardless, the company should have been barred from applying Sec 11d. over three years after the fact, based on the legal doctrines of waiver, estoppel and laches; and APA should have insisted such.

**Third;** APA already exercised its discretion and elevated my grievance to a PAC, so it is clear APA believed there was a contractual basis at that point, but now suddenly and illogically claims that there is not one.

**Fourth;** If APA now believes my grievance was somehow plead out defectively, as alluded to by APA Legal, it is not because I didn't ask APA to file it on my behalf; and only after having my request ignored by my base reps, and the APA Legal Director, was I forced to file by myself without any APA assistance or guidance. I'm a layman, and only added the specificity of the SOX and EEOC claims as contributory factors to bolster my contractual grievance. Only now is it my understanding that grievances APA drafts are usually very vague and without specificity. My grievance request letter as submitted was never intended to limit my claims in any way, but now I feel like APA is now penalizing me for adding contributory factors that I thought were relevant.

**Fifth;** Further, during the recent Equity dispute arbitration testimony, the APA membership committee chairman admitted that a pilot who engaged in statutorily protected union activity, and was fired in retaliation, and subsequently filed a grievance, would be regarded as TAG (Terminated Awaiting Grievance), and that their jobs would be protected. Further Meadows has argued in his Equity Challenge that he should have been classified as TAG, and the arbitrators ruling on that issue is imminent. APA would be remiss to deny Meadows a System Board, before the arbitrator rules. Yo do otherwise, would deprive him of all of his remedies available under the CBA to defend his termination.

**Sixth;** <u>While Sec 11D. appears to be facially neutrally, it amounts to nothing more than a unlawful "No-leave policy" which is strictly prohibited by the ADA.</u> UAL and UAL ALPA learned this lesson the hard way, after and adverse and groundbreaking ruling by the 7th Circuit in *EEOC v. United Airlines*. APA should proactively seek to remove the unlawful Sec 11.D from the CBA, for as a consignor of the CBA it will be hold just as liable and accountable as the company.

**Seventh;** APA as a union operating in a union-represented workplace is subject to the requirements of the R.L.A. and negotiated collective bargain agreements, in addition to requirements of other federal and state employment discrimination laws. Specifically, APA is a covered entity under the Americans with Disabilities Act, and is required to assist its disabled members with reasonable accommodations. However, APA refused to do so in my case, and allowed the company to "direct deal", and deny me any form of accommodation

**Eighth;** If my grievance is resolved favorably it would benefit each and every pilot at APA, and especially the disabled pilots, and particularly those affected under pending DFW Domicile Grievance 12-012. Moreover, during Equity Dispute Merit's Hearing testimony, Membership Committee Chairman, and DFW Base Chair, Capt. Rusty McDaniels, the filer of 12-012; admitted that he would like to see APA have discussions and its negotiators look at eliminating Sec 11. D just as United had done for its pilots CBA. There is no reason our

disabled pilots shouldn't enjoy the same security and protections afforded to their peers at UAL and SW, and be allowed to remain on the seniority list until such time that they can medically qualify to return to the cockpit, or until retirement age.

**Ninth;** Regardless of the disposition of my grievance #12-011, American already has and will continue to assert that I can't pursue any other legal remedies, until all of my administrative remedies, to include grievance 12-012 are fully exhausted.

**Tenth;** American has asserted in bankruptcy pleadings that, *"On Feb. 4, 2012 the APA filed a grievance (DFW Domicile Grievance No. 12012) (the "APA Grievance" on behalf of Meadows and certain other DFW-based pilots that had been terminated because of the five year rule, asserting they had not received adequate notice of their terminations. The APA grievance is pending. Unless resolved in that process, it will be decided by a Board of Adjustment under the CBA as required by the Railway Labor Act. 49 U.S.C. § 184."* Grievance 12-012 on its face essentially seeks to modify or eliminate the terms of Sec. 11.D. However, it's been over 1 1/2 years since it was filed, and APA has not even sought a hearing on that grievance, much less sent it to a System Board. Given, APA's actions, or lack thereof on this issue, it becoming more and more evident that APA is loathe to address the fact that American's "five year rule" in Sec. 11.D amounts unlawful "No-Leave" Policy, in violation of the ADA; to the detriment of myself or the any if other similarly situated disabled pilots.

**Eleventh;** Despite APA refusal to acknowledge otherwise, the record facts are clear that, I WAS TERMINATED BY AA in violation of both the contract and federal statutes. AA did not simply remove me from the seniority list, and but also terminated my employment; and only did so in retaliation; just two weeks after I engaged in statutorily protected reporting activity as a union member. Wherein, I reported the "Pilot disability Nurse Case Management Cost Savings Program", which was facilitated through the use of a fraudulent 3rd party disability claims reviewer, in violation of Supp-F of the contract. My exposure of the fraudulent pilot disability costs savings scheme has conferred a benefit to all current and future AA pilot long term disability claimants. <u>Regardless, of whether an APA member engages in protected strike activity under the RLA, or an Air-21-WB complaint under the FAA, or a SOX-WB complaint under OSHA as I did; APA should aggressively, and equally defend the termination of any member who engaged in such statutorily protected activity that was conducted in the best interest of APA and its members, as is the case here.</u>

**Twelfth;** Sadly APA was complicit with AA in the pilot disability cost savings scheme, by mutually selecting and agreeing to a non-clinical, procedurally flawed and fraudulent disability claims reviewer named Western Medical Evaluators (WME), in violation of Supp-F. APA never made any attempt to mitigate the damages suffered by the 29 pilots who lost their benefits at the hands of the now defunct WME; which was shut down by the Texas Insurance Board just one month after reviewing Meadows, and its principals were convicted of multiple

counts of felony medical claim fraud. In spite of all that, APA steadfastly refused to Meadows certified requests to be re-reviewed by the new claims reviewer the Mayo Clinic. Meadows was forced to go to the Mayo at his own expense, and managed to use Mayo's diagnosis to subsequently reapply and be approved for LTD benefits. Unfortunately, APA offered absolutely no assistance, and had no involvement whatsoever in the reinstatement of his LTD benefits.

**Thirteenth;** APA has the opportunity to resolve this Sec 11. D issue to the benefit of all its members, right here and right now. Furthermore, if APA BOD Officer, Capt. McDaniel's is sincere about protecting the his members under 12-012, which I believe his testimony clearly showed, then APA can use my grievance as the vehicle to effectuate immediate relief to all similarly situated disabled/sick pilots. Therefore, I respectfully request the Association President appeal my grievance 12-011 to the System Board of Adjustment for a final review.

In closing APA is leaving me in an untenable situation, with no further recourse against the company. I truly desire to return to the cockpit, and would like to continue to work with APA to accomplish that goal. Therefore, based on all the foregoing reasons I respectfully ask you to reconsider your decision and appeal my grievance to a System Board of Adjustment before the 30 day deadline to do so expires on tomorrow.


Fraternally,

*L. M. Meadows*

Lawrence Meadows
777FO/MIA AA#332713



CC: APA Dir of Legal, Bennett Boggess; APA Staff Attorney Chuck Hairston; MIA Chair, Ivan Rivera; MIA Vice-Chair, Thomas Copeland; APA Vice President Neil Roghair; APA Secretary Treasurer, Pam Torell; APA General Counsel, Ed James