SCANNED

# **EXHIBIT   11**

**ALLIED PILOTS ASSOCIATION EQUITY DISTRIBUTION ARBITRATION**

| | |
|---|---|
| **In the Matter of** | |
| **DISTRIBUTION OF EQUITY BY ALLIED PILOTS ASSOCIATION** | **DECISION AND AWARD** |

**Arbitrator:   Stephen B. Goldberg**

**HEARING APPEARANCES – ALLIED PILOTS ASSOCIATION:**

Edgar N. James, Attorney (James & Hoffman, P.C.)
Daniel Rosenthal, Attorney (James & Hoffman, P.C.)
Jeff Vockrodt, Attorney (James & Hoffman, P.C.)

Mark R. Myers, Attorney, Allied Pilots Association

**HEARING APPEARANCES – CHALLENGERS:**

**Counsel:**

John O'B. Clark, Jr., Attorney for CA David Williams, FO Thomas Duncan, *et al.*
Gavin MacKenzie, Representative for FO Gregory Cordes
Stanley Silverstone, Attorney for CA Larry Scerba, *et al.*
Scott Singer, Attorney for CA Ann Singer
Ronald Surkin, Attorney for FO Wallace Preitz

**Challengers:**

| | | |
|---|---|---|
| CA Keith Bounds | FO Richard Elder | FO Wallace Preitz |
| CA Markus Bras | FO Kathy Emery | FO Eric Sapp |
| FO James Callaway | CA Steven Fulmer | CA Larry Scerba |
| FO Gregory Cordes | CA Stephen Greene | CA Sammy Lynn Sevier |
| CA Stephen Cox | FO Lloyd Hamlin | FO Leland Shanle |
| FO Stephen Davidson | FO Mark Hass | CA Ann Singer |
| FO James Dodson | CA Harold Hoffman | FO Brian Smith |
| FO Glen Dominy | FO Melanie Jarvi | CA Roy Wall |
| CA Martin Dravis | FO Lawrence Meadows | FO Ken Wuttke |
| | FO Momcilo Mihailovic | |

    a.     FO Lawrence Meadows.

First Officer Lawrence Meadows began LTD status on April 19, 2004. In December 2007, AA terminated his disability benefits on the ground that he was no longer disabled. AA thus placed him on Sick Leave of Absence. FO Meadows filed an ERISA action in the U.S. District Court for the Southern District of Florida challenging the termination of his disability benefits. This action was dismissed on summary judgment in March 2011, and an appeal from that decision is pending before the U.S. Court of Appeals for the Eleventh Circuit.

On or about September 12, 2011, FO Meadows filed a complaint with OSHA, alleging that AA's termination of his disability benefits in 2007 had been part of a scheme to deny disability benefits to many pilots in order to reduce American's obligations under its defined benefit plan, thus violating the Sarbanes-Oxley Act. According to FO Meadows, he informally advised AA counsel of his intention to file this action and, on July 18, 2011, he reported the allegedly unlawful scheme to AA managers and counsel.[107]

On August 5, 2011, shortly after FO Meadows informed American of his pending Sarbanes-Oxley complaint, he was advised by American that because he had been on Sick Leave of Absence (SLOA) since April 19, 2004, he had exceeded the contractual and Company policy time limit of five years on SLOA, and his administrative separation from employment was required.[108] FO Meadows was administratively separated from the Company and removed from the seniority list on November 4, 2011.

On February 4, 2012, FO Meadows filed a grievance claiming that his November 4, 2011, removal from the AA seniority list and his discharge were in retaliation for his having filed a Sarbanes-Oxley complaint. By agreement of American and APA, that grievance, along with several others, was preserved in the AA bankruptcy proceedings. FO Meadows' grievance was denied by American on June 6, 2013. On June 28, 2013, APA submitted the grievance to the System Board for a Pre-Arbitration Conference, noting that the grievance "protest[ed] the Company's action in removing him from the seniority list and discharging him from American Airlines."

APA determined that for Equity Fund distribution purposes, FO Meadows was an LTD Category 2 pilot, no longer on the seniority list, hence eligible for distributions solely from the

---

[107] FO Meadows' Sarbanes-Oxley complaint was scheduled for hearing before a Department of Labor Administrative Law Judge on June 10, 2013. That hearing was stayed at American's request because of the pending bankruptcy proceedings.

[108] Article 11.D(1) of the 2003 CBA provides:

> When leaves are granted on account of sickness or injury, a pilot shall retain and continue to accrue his seniority irrespective of whether or not he is able to maintain his required certificates or ratings, until he is able to return to duty or is found to be unfit for such duty. A leave of absence for sickness or injury shall not commence until after a pilot has exhausted accrued sick leave credits provided under Section 10 of this Agreement. Such leave of absence for sickness or injury may not exceed a total continuous period of three (3) years *unless extended by mutual consent of the Company and the Association, in which case it may not exceed a total continuous period of five (5) years.* . . . (Emphasis added).

Pension and Per Capita Silos. FO Meadows asserts that he should be eligible for distributions from all four silos as a result of his February 4, 2012, grievance.

APA defends its determination on the grounds that:

> FO Meadows has been inactive for more than five years, starting when he began receiving disability benefits in 2004. He is no longer on the seniority list and APA reasonably determined that pilots in his condition were very unlikely to be affected by the concessions associated with the Inverse Seniority Silo and the Years of Service Silo.[109]

It is true that FO Meadows has been inactive and on sick leave for more than five years, and that in the normal situation the CBA would call for his administrative separation and removal from the seniority list. But those are not the only relevant facts. FO Meadows filed a grievance in February 2012 alleging that the reason why American removed him from the seniority list was not that he had been on sick leave for more than five years (which would have called for his removal in 2009), but because he had filed a 2011 Sarbanes-Oxley complaint against American. APA has submitted that grievance to a Pre-Arbitration Conference, noting that the grievance "protest[ed] the Company's action in removing him from the seniority list and discharging him from American Airlines." Hence, if his grievance is sustained, FO Meadows' administrative termination will be overturned, and he will be back on the seniority list, presumably retroactive to the date he was removed, *i.e.*, November 4, 2011. It is equally safe to assume that if his grievance is sustained, the arbitrator would not countenance his removal from the seniority list in the period between November 4, 2011, and the date of the arbitration award. In sum, then, it is reasonable to assume that if the grievance is sustained, FO Meadows would be treated by the arbitrator as a pilot who should have been on the seniority list on January 1, 2013, the date on which pilots on the seniority list are eligible for recovery from all four silos, even if they were on LTD status.

FO Meadows argues that he should be treated like a TAG pilot because of his pending grievance. Much like a TAG pilot who will be returned to active duty if his grievance is successful, Meadows will be returned to the seniority list if his grievance is successful. To be sure, the outcomes are different, but in each case the grieving pilot may obtain an advantageous change of status. And in each case APA supports the pilot's efforts at reinstatement, whether it is to active duty for a TAG pilot or to the seniority list for Meadows.

APA claims that Meadows cannot be treated as a TAG pilot because TAG is an internal APA code, which has always been used to describe pilots who have a pending grievance challenging their termination for cause, not an administrative termination such as the one underlying FO Meadows' grievance. APA states, "TAG is a code entirely internal to the APA; the arbitrator should defer to APA's interpretation of its own internal policy."[110]

---

[109] APA Post-Hearing Brief at 34-35.
[110] APA Post-Hearing Brief at 32.

I accept APA's position and do not require APA to deviate from its policy of using the TAG denomination solely to refer to pilots who have a grievance pending that challenges their termination for cause. I do, however, hold that it is arbitrary for APA to treat pilots who have a pending TAG grievance as sufficiently likely to be successful that they will be treated, for purposes of Equity Fund eligibility, as if they will be successful, while treating differently pilots who have a pending non-TAG grievance that challenges an administrative termination.

APA offers no explanation for this different treatment, other than to state, as previously noted, that its treatment of TAG pilots is "consistent with APA's advocacy for these pilots' reinstatement to active status and with the fact that a substantial portion of pilots on TAG have been reinstated." APA ignores the fact that it also is advocating for FO Meadows, albeit for reinstatement to the seniority list. Furthermore, while the assertion that "a substantial portion of pilots on TAG have been reinstated" may be true, it is wholly unsupported by evidence in the record. Nor is there record evidence that a grievance seeking reinstatement to active duty is more likely to be successful than a grievance seeking reinstatement to the seniority list.

FO Meadows' challenge is sustained and APA will be directed to make him eligible for a distribution from all silos.

b.      FO Kathy Emery and FO Wallace Preitz.

Both FO Emery and FO Preitz have presented voluminous evidence regarding the termination of their LTD benefits, including their efforts to have those benefits reinstated. Not all of this evidence is ultimately relevant to the disposition of their challenges, but I summarize much of it here.

i.      *FO Kathy Emery: summary of the evidence.*

FO Kathy Emery joined American Airlines in September 1992 and flew for more than 10 years before she was medically disqualified from flying. In April 2003, she applied for LTD benefits and her application was approved. Her benefits were terminated on January 25, 2007, due to a lack of substantiation of her medical disability. FO Emery appealed this denial to AA's Pension Benefits Administration Committee ("PBAC"), seeking reinstatement of her LTD benefits. As part of its consideration of FO Emery's appeal, PBAC purported to rely on evaluations made by Western Medical Evaluators ("WME"). No one from WME ever examined FO Emery and the record suggests that someone from PBAC may have influenced WME's opinion.[111]   FO Emery's appeal to the PBAC was denied on October 22, 2007.

After FO Emery's appeal was denied, she received a letter from her supervisor advising her that she needed to return to work or be terminated. She asserts that a hearing was held with

---

[111] In addition, FO Emery and FO Preitz both suggest that fraud at WME contributed to the PBAC denial of their appeals. As outlined by FO Preitz in his Post-Hearing Brief, WME and its principals were indicted by the State of Texas and entered pleas of no contest on charges of securing execution of documents by deception. (FO Preitz Post-Hearing Br. at 6.) WME and its principals have also been accused of sending out forged or fraudulent doctors' reports and one of the two doctors who allegedly wrote a report in support of the termination of FO Preitz's benefits has sworn that the alleged report was forged. (FO Preitz Post-Hearing Br. at 7, 10.) While troubling, these allegations of fraud are not necessary to my decision on these challenges.